UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ELIZON MASTER PARTICIPATION TRUST 1, et al.,

Plaintiff(s),

v.

SATICOY BAY LLC SERIES 8920 EL DIABLO, et al.,

Defendant(s).

Case No. 2:16-CV-751 JCM (VCF)

ORDER

Presently before the court is defendant/counter-claimant Saticoy Bay LLC Series 8920 El Diablo's ("Saticoy") motion for summary judgment. (ECF No. 35). Plaintiff/counter-defendant Elizon Master Participation Trust 1, U.S. Bank Trust National Association, as Owner Trustee ("Elizon") filed a response (ECF No. 40), and Saticoy filed a reply (ECF No. 41).

Also before the court is Elizon's motion for summary judgment.[1] (ECF No. 36). Saticoy filed a response (ECF No. 39), and Elizon filed a reply (ECF No. 42).

I. **Introduction**

The present case involves a dispute over real property located at 8920 El Diablo Street, Las Vegas, Nevada 89131 (the "property").

On January 13, 2012, Ralph and Rebecca Lake (the "Borrowers") obtained a loan in the amount of $149,121 from Bank of America, N.A. ("BOA") and purchased the property. (ECF No. 3). The deed of trust listed Recon Trust Company, N.A. as the Trustee and Mortgage Electronic Registration System, Inc. ("MERS") as the beneficiary. *Id.*

---

[1] Elizon also submitted a corresponding request for judicial notice (ECF No. 37) and declaration (ECF No. 38).

On July 31, 2012, an assignment of the deed of trust was recorded, whereby MERS assigned the deed of trust to BOA. *Id.*

On January 30, 2013, Hampton & Hampton Collections, LLC ("the HOA trustee") recorded a notice of default and election to sell property, on behalf of Silverstone Ranch Community Association ("the HOA"). *Id.*

On March 12, 2013, BOA, through counsel, requested a superpriority lien payoff demand and an account ledger from the HOA trustee. *Id.* The HOA trustee sent BOA a ledger stating an amount due of $2,354.50. *Id.* The ledger did not specify the amount of the superpriority portion. *Id.* Because the ledger did not provide the superpriority portion, BOA, through its counsel, estimated nine months of HOA assessments at $509.85 and tendered as much to the HOA. *Id.* On May 3, 2013, the HOA trustee accepted BOA's payment. *Id.*

On July 19, 2013, a second assignment of the deed of trust was recorded in which BOA conveyed the property to Nationstar Mortgage LLC. *Id.*

On September 9, 2013, the HOA trustee, on behalf of the HOA, recorded a second notice of default and election to sell property. *Id.* On June 16, 2014, the HOA trustee, on behalf of the HOA, recorded a notice of trustee's sale against the property, stating that the total amount due on the lien was $3,338.10. *Id.*

On July 30, 2014, Saticoy purchased the property at the homeowner's association lien foreclosure sale for $34,100. *Id.*

On September 3, 2014, a third assignment of the deed of trust was recorded in which Nationstar conveyed the deed of trust to the secretary of Housing and Urban Development. *Id.* That same day the secretary conveyed the property to Elizon Master Participation Trust I via a fourth assignment of the deed of trust. *Id.* Then, again on September 3, 2014, Elizon Master Participation Trust I conveyed the property to Elizon via a fifth assignment of the deed of trust.

On January 15, 2015, Saticoy recorded its interest in the property acquired at the HOA foreclosure sale. *Id.*

On April 5, 2016, Elizon filed a complaint against Saticoy, the HOA, and the HOA trustee. (ECF No. 1). On April 7, 2016, Elizon filed its amended complaint. (ECF No. 3). The amended

complaint asserts six causes of action: (1) quiet title/declaratory relief against Saticoy and the HOA; (2) preliminary injunction versus Saticoy; (3) unjust enrichment as to all defendants; (4) wrongful foreclosure against the HOA and the HOA trustee (5) negligence against the same; and (6) negligence per se against the same.

In turn, Saticoy asserted counterclaims against Elizon for declaratory relief and to quiet title. (ECF No. 12). Both parties now move for summary judgment on their respective claims.

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

**James C. Mahan**
**U.S. District Judge**

- 3 -

party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III. Discussion

#### A. Preliminary injunction

As an initial matter, claim (2) of Elizon's complaint will be dismissed, as this court follows the well-settled rule that a claim for "injunctive relief" is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

#### B. Quiet title

The court takes judicial notice of the following recorded documents: the first deed of trust (ECF No. 37-2); the assignments of deed of trust (ECF Nos. 37-3 through 37-7); the first notice of default and election to sell (ECF No. 37-8); the second notice of default and election to sell (ECF No. 37-12); the notice of trustee's sale (ECF No. 37-13); and the trustee's deed upon sale (ECF No. 37-14). *See, e.g., United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). The court also takes judicial notice of the notice of delinquent assessment lien. (ECF No. 35-3).

In Saticoy's motion, it contends that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished Elizon's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF No. 37). Saticoy further contends that the foreclosure sale should not be set aside because Elizon has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). (ECF No. 37).

In Elizon's motion for summary judgment and in its response to Saticoy's motion for summary judgment, Elizon sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); (2) its predecessor-in-interest offered to pay, and the HOA accepted, an amount equal to nine months of homeowner's association assessments, thus adequately preserving the first deed of trust; (3) ) the trustee's sale failed to comply with NRS 116.3116 as the foreclosure notices includes additional costs and fees which are impermissible under the statute and the sale crier's failure to indicate at the foreclosure sale that there had been tender to extinguish the superpriority portion of the HOA's constitutes grounds for setting aside the sale;[2] (4) the foreclosure sale was commercially unreasonable and there was fraud, unfairness, and oppression as the foreclosure sale failed to comply with NRS 116.3116; (5) Saticoy is not a bona fide purchaser; and (6) *SFR Investments* should not be applied retroactively. (ECF Nos. 36, 40). The court begins with the question of tender and analyzes the rest of Elizon's claims in turn.

### 1. Tender offer

Elizon argues that BOA's tender of its computation of the superpriority amount extinguished the HOA's superpriority lien prior to the foreclosure sale. (ECF No. 3 at 5). Elizon asserts that pursuant to the ledger the HOA trustee sent to BOA's counsel, the amount due for

---

[2] Elizon also asserts in the introduction of its motion for summary judgment that the CC&R's of the HOA themselves preclude the extinguishment of the first deed of trust. After this initial reference, Elizon does not thereafter reference or further develop the point.

James C. Mahan
U.S. District Judge

- 5 -

monthly assessments from September 10, 2012 to May 10, 2013, was $509.85. (ECF No. 3 at 5).[3] BOA remitted a check for $509.85 to the HOA trustee on April 18, 2013. *Id.* The HOA trustee accepted BOA's check on or around May 3, 2013. (ECF No. 36 at 8). Elizon thus maintains that Saticoy took title to the property subject to Elizon's deed of trust. (ECF No. 3 at 6-8).

The superpriority lien portion consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Invs.*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Here, neither party has established that it is entitled to judgment as a matter of law. The notice of default recorded January 30, 2013, set forth an amount due of $2,354.50. (ECF No. 3 at 5). BOA elected to pay a lesser amount ($509.85) based on its theory that the amount stated in the notice included more than what was due. In reviewing the statement of account that the HOA trustee provided to BOA, the HOA assessment was $56.65 per month. (ECF No. 37-9). The statement of account does not appear to include any maintenance or nuisance-abatement charges. *See id.* (including fees for nine months' worth of assessments, as well as "Statement to Trustee

---

[3] Elizon's complaint states in paragraph 26 that the payoff demand included a breakdown of the amount owed to the HOA through May 1, 2013, including fees and costs. (ECF No. 3 at 5). However, the payoff demand that Elizon attached to its motion for summary judgment lists May 10, 2013, as the relevant computation date, not May 1. (ECF No. 37-9).

(management fee)," "Intent to Lien," "Postage and Photocopies" (x3), "Reminder Notices-Mgmt.," "Unpaid Late Fees (8/12-10/12)," "Late Fee" (x6), "Lien Preparation," "Title Search," "Notice of Default and Election to Sell Preparation," "Recording and Delivery of Default," and "Demand Fee."). Therefore, the amount tendered by BOA and accepted by the HOA could potentially be the entirety of the super-priority lien amount as contemplated by NRS 116.31162.

However, the court must also consider what happened after the initial tender in determining whether the HOA foreclosure sale extinguished the first deed of trust. The HOA trustee recorded a second notice of default and election to sell. (ECF No. 37-12). Elizon did not attempt to pay off the lien after recordation of the second notice.[4]

There exists a genuine dispute of material fact as to whether the HOA's lien on the property at the time of the foreclosure sale contained a super-priority portion capable of extinguishing Elizon's first deed of trust. Therefore, assuming Elizon cannot assert the sale is otherwise void and Saticoy cannot demonstrate an equitable ground for relief, neither movant is entitled to summary judgment on their claims for quiet title.

### *2. Due process*

Elizon has failed to show that the Ninth Circuit decision *Bourne Valley* mandates judgment in favor of Elizon. Despite Elizon's interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional.

At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

---

[4] The parties did not provide the court with any documentation detailing the breakdown of costs related to the second notice of default.

The holding in *Bourne Valley* provides little support for Elizon, as Elizon's contentions are not predicated on an unconstitutional shift of the notice burden. Elizon does not argue that it or its predecessor-in-interest lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Rather, Elizon complains about the content of the recorded notices that it and its predecessor received. (*See* ECF No. 3 at 7). Accordingly, Elizon's challenge based on due process and *Bourne Valley* fails as a matter of law.

### 3. *The foreclosure sale failed to comply with NRS 116*

Elizon contends in its complaint and motion for summary judgment that the foreclosure sale should be held invalid because the HOA and its trustee failed to comply with NRS 116. Specifically, Elizon alleges that the HOA trustee's notices included both superpriority and subpriority portions of the lien, and that the seller at the foreclosure sale failed to announce BOA's alleged tender prior to the sale. Elizon asserts that the HOA trustee and the seller's conduct are deficiencies in the foreclosure process that warrant either rescission of the sale or a decree that the buyer took title subject to Elizon's deed of trust. (ECF No. 36).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[5] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[5] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood*, 366 P.3d at 1110

Elizon fails to demonstrate deficiencies in the HOA trustee's notices prior to the foreclosure sale. Under *Shadow Wood*, the recitals in the deed granted pursuant to NRS 116.31164 are conclusive evidence that the seller complied with the notice requirements of the foreclosure statutes. *See* 366 P.3d at 1110. Elizon raises no genuine issue of material fact as to non-compliance with the foreclosure lien statutes.

Further, Elizon's assertions do not conclusively establish that the seller conducted the foreclosure sale improperly. There exists a genuine dispute as to whether Elizon's predecessor in interest tendered an amount sufficient to satisfy the HOA's superpriority lien. Elizon points to no statute or case law compelling the seller to inform potential buyers of incomplete attempts to pay off the lien being foreclosed upon. Elizon's assertions regarding the foreclosure process and sale do not support its motion for summary judgment.

### 4. Commercial reasonability

Elizon argues that the court should grant its motion because the foreclosure sale for approximately 16% of the property's fair market value was grossly inadequate and because Elizon can establish evidence of fraud, unfairness, or oppression. (ECF No. 36 at 12–13).

Elizon claims that the Nevada Supreme Court adopted the restatement approach in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1110 (Nev. 2016) ("*Shadow Wood*"), quoting the opinion as holding that although "gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 36 at 11–12).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Invs.*, 334 P.3d at 410. Numerous courts have interpreted

the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[6]

In *Shadow Wood*, the Nevada Supreme Court held that a homeowner's association foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite Elizon's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement approach. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical

---

[6] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, Elizon fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. Elizon relies on its repeated assertion that its predecessor's payment of an estimate of nine months of assessments is sufficient to show fraud, unfairness, or oppression, as the foreclosure sale must have violated NRS 116.3116. However, as the discussed previously, there is a dispute of material fact as to whether a superpriority portion of the HOA's lien existed at the time of foreclosure.

Accordingly, Elizon's commercial reasonability argument fails, as it has not come forward with evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *5. Bona fide purchaser status*

Whether Saticoy is a bona fide purchaser under Nevada law has no effect on the parties' relative interests in the property.[7]

---

[7] Further, it is unlikely that Saticoy could qualify as a bona fide purchaser in the first instance, as it would be on record notice of Elizon's interest.

Nevada is a race notice state, holding as a general rule that priority between two interests in property recorded by bona fide purchasers or encumbrancers depends on which lien was recorded first in time. *See Buhecker v. R.B. Peterson & Sons Constr. Co.*, 929 P.2d 937, 939–40 (Nev. 1996) (citing Nev. Rev. Stat. 111.325). Nevada's statutory recording act provides,

> Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded.

Nev. Rev. Stat. 111.325.

Here, Elizon does not need to show that the foreclosure sale is void in order to possess an interest superior to Saticoy. If Elizon establishes that no superpriority lien existed on the home at the time of foreclosure, then Elizon would hold superior title to Saticoy regardless of Saticoy's status as a bona fide purchaser. *Id.* On the other hand, if Saticoy establishes that it purchased the property pursuant to the HOA's foreclosure of its superpriority interest, then Saticoy takes title free and clear of Elizon's interest even if Saticoy had prior notice. *See* Nev. Rev. Stat. 116.3116. Thus, Saticoy's discussion of whether it was a bona fide purchaser is irrelevant to the case at bar.

### 6. *Retroactivity*

In its response to Saticoy's motion for summary judgment, Elizon contends that *SFR Investments* should not be applied retroactively. (ECF No. 40 at 16).

This court has consistently held that *SFR Investments* applies retroactively, and the Nevada Supreme Court has recently confirmed this court's position. *K&P Homes v. Christiana Trust*, 133 Nev. Adv. Op. 51 (July 27, 2017). Accordingly, Elizon's contention fails.

### C. Unjust enrichment

Under Nevada law, unjust enrichment is an equitable doctrine that allows recovery of damages "whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mortg. & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981); *see also Asphalt Prods. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995). The statute of limitation for an unjust enrichment claim is four years. *In re Amerco Derivative Litig.*,

252 P.3d 681, 703 (Nev. 2011) (citing NRS 11.190(2)(c)).  To state an unjust enrichment claim, a plaintiff must plead and prove three elements:

> (1) a benefit conferred on the defendant by the plaintiff;
> (2) appreciation by the defendant of such benefit; and
> (3) an acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.

*Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1119 (D. Nev. 2014) (citing *Unionamerica*, 626 P.2d at 1273).  However, where there is an express contract, an unjust enrichment claim is unavailable.  *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975,* 942 P.2d 182, 187 (Nev. 1997) (finding that the existence of an expressed, written agreement bars an unjust enrichment claim because there can be no implied agreement).

Here, Elizon's complaint alleges that the HOA non-judicially foreclosed on property, selling the property to Saticoy.  After the sale, Elizon paid property taxes and insurance, and also paid homeowner's association assessments.  However, there was no quasi-contractual relationship between the parties with regard to Elizon's property taxes and insurance payments.  Thus, Elizon's complaint does not allege an equitable claim for unjust enrichment on these grounds.  Further, although Elizon asserts that it continued to pay homeowner's association assessments, neither its complaint nor its motion direct the court to evidence of payments to a named defendant.  The court will deny Elizon's motion for summary judgment on its claim for unjust enrichment.

**D.  Wrongful foreclosure**

The elements of a claim for wrongful foreclosure are: (1) that a foreclosure sale occurred; and (2) the [debtor] was not in default.  *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev.1983).

Here, as discussed previously, Elizon has not met its burden of showing that there is no genuine dispute of material fact as to whether the debtor was in default on the date of the foreclosure sale.  Thus, the court will deny Elizon's motion for summary judgment on its claim for wrongful foreclosure.

. . .

. . .

### E. Negligence

"To prevail on a traditional negligence theory, a plaintiff must demonstrate that '(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages.'" *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) (quoting *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012)).

Here, Elizon asserts that the HOA trustee's non-foreclosure sale violated a duty of care that the HOA trustee owed to Elizon's predecessor in interest. Elizon does not present any case law to support its position. Elizon has not established that, as a matter of law, the HOA breached a duty owed to Elizon. The court denies Elizon's motion for summary judgment on its negligence claim.

### F. Negligence *per se*

A plaintiff establishes a negligence *per se* claim by showing that a statute creates a duty, and that a violation of that statute constitutes a breach. *Torrebela v. Kesmetis*, 178 P.3d 716, 721 (Nev. 2008). The plaintiff must then show that the violation of the statute caused the damages that he or she is alleging. *See Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (Nev. 1983) ("A violation of a statute establishes [only] the duty and breach elements of negligence."). The duty and breach elements of negligence may be established under negligence *per se* only if the injured party is of the class of people that the statute intended to protect and the alleged injury was of the type that the statute intended to protect from. *Id.*

Here, Elizon alleges that its predecessor-in-interest attempted to pay off the lien before the sale occurred. (ECF No. 3 at 4-5). Assuming, *arguendo*, that a violation of NRS chapter 116 can constitute a negligence *per se* claim, Elizon fails to provide any facts to support its conclusory allegations that the statute (1) was attempting to protect Elizon and (2) that the injury Elizon suffered was the type of injury that the statute was trying to protect from. In the complaint, Elizon merely alleges that "Elizon is a member of the class that NRS 116 is trying to protect" and that "the injury that Elizon faces—extinguishment of its first position Deed of Trust—is the type against which NRS Chapter 116 is intended to protect." (ECF No. 3 at 15). These two conclusory

statements are insufficient to support a motion for summary judgment. The court thus denies Elizon's motion for summary judgment as to its negligence *per se* claim.

## IV. Conclusion

The HOA, through its trustee, foreclosed on its interest in the property through a non-judicial foreclosure sale pursuant to NRS 116. There is a dispute of material fact as to whether this interest contained a superpriority portion. Therefore, neither party is entitled to summary judgment on their respective claims for quiet title.

Elizon has not demonstrated that it is entitled to summary judgment on its claims for unjust enrichment, wrongful foreclosure, negligence, or negligence per se.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Saticoy's motion for summary judgment (ECF. No. 35) be, and the same hereby is, DENIED, consistent with the foregoing.

IT IS FURTHER ORDERED that Elizon's motion for summary judgment (ECF No. 36) be, and the same hereby is, DENIED, consistent with the foregoing.

DATED September 21, 2017.

_____
UNITED STATES DISTRICT JUDGE