MELANIE MORGAN, ESQ.
Nevada Bar No. 8215
DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
AKERMAN LLP
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134
Telephone: (702) 634-5000
Facsimile: (702) 380-8572
Email: melanie.morgan@akerman.com
Email: donna.wittig@akerman.com

*Attorneys for Plaintiff and Counter-Defendant Nationstar Mortgage LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>SATICOY BAY LLC SERIES 8920 EL DIABLO, a Nevada limited liability company,<br><br>Defendant.<br><br>AND ALL RELATED CLAIMS. | Case No.: 2:16-cv-00751-JCM-VCF<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Following a bench trial held on April 9, 2018 and April 10, 2018, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

**A. Facts Stipulated by the Parties**

1. This matter involves a dispute over title to a property known commonly as 8920 El Diablo Street, Las Vegas, Nevada, 89117 (the "Property").

2. The property is subject to the Declaration of Covenants, Conditions, and Restrictions for Silverstone Ranch, a planned community ("the CC&Rs") recorded on June 14, 2002, as instrument number 20020614-02202.

3. Former plaintiff/counterdefendant Elizon Master Participation Trust I, U.S. Bank

Trust National Association, as Owner Trustee is a banking entity operating throughout the United States.[1]

4. Plaintiff/counterdefendant Nationstar Mortgage LLC is a limited liability company formed under the laws of the State of Delaware and authorized to conduct business in the state of Nevada.

5. Dismissed defendant Silverstone Ranch Community Association ("the HOA")[2] is a homeowners association and domestic non-profit corporation formed under the laws of the state of Nevada which generally manages and maintains the amenities for the development in which the Property is located and levies and collects assessments from homeowners within the development.

6. Dismissed defendant Hampton & Hampton Collections, LLC ("Hampton")[3] is a corporation formed under the laws of the State of Nevada and was the foreclosure agent acting on behalf of the HOA at all times relevant to this matter.

7. Defendant/counterclaimant Saticoy Bay LLC Series 8920 El Diablo is a series limited liability company formed under the laws of the State of Nevada.

8. On January 11, 2012, Ralph Lake and Rebecca Lake (hereinafter referred to as "the former owners") executed a deed of trust in the amount of $149,121.00 within which Bank of America, N.A. was named as lender and Mortgage Electronic Registration Systems, Inc. ("MERS") was acting as beneficiary and nominee for Lender and Lender's successors and assigns. This deed of trust was recorded on January 13, 2012, as instrument number 201201130002073 as an encumbrance to the property. The former owners used the funds from the deed of trust to purchase the property.

9. The deed of trust contains a Planned Unit Development Rider stating, "[i]f Borrower does not pay PUD dues and assessments when due, then Lender may pay them."

10. On July 27, 2012, Mortgage Electronic Registration Systems, Inc. assigned its beneficial interest in the deed of trust to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing LP. The assignment was recorded on July 31, 2012 in the Official Records of the

---

[1] Nationstar Mortgage LLC was substituted as plaintiff. (ECF 91 (Apr. 6, 2018).)
[2] Silverstone was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF 92 (Apr. 6, 2018).)
[3] Hampton was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF 92 (Apr. 6, 2018).)

44889066;1

Clark County Recorder as instrument number 201207310002193.

11. On July 19, 2013, an assignment of deed of trust was recorded in the Official Records of the Clark County Recorder as instrument number 201307190001415 whereby Bank of America, N.A. assigned its beneficial interest in the deed of trust to Nationstar Mortgage LLC.

12. On September 3, 2014, a corporate assignment of deed of trust was recorded in the Official Records of the Clark County Recorder as instrument number 20140903-0000433 whereby Nationstar Mortgage LLC assigned its beneficial interest in the deed of trust to the Secretary of Housing & Urban Development.

13. On September 3, 2014, a corporate assignment of deed of trust was recorded in the Official Records of the Clark County Recorder as instrument number 20140903-0000434 whereby the Secretary of Housing & Urban Development assigned its beneficial interest in the deed of trust to Elizon Master Participation Trust I.

14. On September 3, 2014, a corporate assignment of deed of trust was recorded in the Official Records of the Clark County Recorder as instrument number 20140903-0000435 whereby Elizon Master Participation Trust assigned its beneficial interest in the deed of trust to Elizon Master Participation Trust I, U.S. Bank Trust, National Association as Owner Trustee.

15. On October 3, 2016, a corporate assignment of deed of trust was recorded in the Official Records of the Clark County Recorder as instrument number 201610030000320 whereby Elizon Master Participation Trust I, U.S. Bank Trust, National Association as Owner Trustee assigned its beneficial interest in the deed of trust to Nationstar Mortgage LLC.

16. Nationstar Mortgage LLC is the current record beneficiary of the deed of trust.

17. The HOA's assessments were $56.65 per month.

18. On or about December 17, 2012, Hampton, on behalf of the HOA created and mailed to the former owners a pre-lien letter and a Notice of Delinquent Assessment Lien with an amount due and owing of $1,040.25, based on the former owners' failure to make assessment payments to the HOA.

19. On January 30, 2013, Hampton, on behalf of the HOA, recorded a notice of default and election to sell real property to satisfy delinquent assessment lien ("the first notice of default")

with an amount due of $1,899.90, in the Official Records of the Clark County Recorder as instrument number 201301300001818.

20. On April 18, 2013, Miles, Bauer, Bergstrom & Winters, LLP, on behalf of Bank of America, tendered a check in the amount of $509.85 to Hampton to satisfy the superpriority portion of the HOA's lien.

21. Hampton accepted the payment, cashed the check, and, on April 29, 2014 applied $508.85 to the account.

22. On September 9, 2013, Hampton, on behalf of the HOA recorded a notice of default and election to sell real property to satisfy delinquent assessment lien (hereinafter referred to as the "second notice of default") with an amount due of $2,080.25, in the Official Records of the Clark County Recorder as instrument number 201309090001452.

23. At the time of the recording of the second notice of default, the beneficiary of the deed of trust was Nationstar Mortgage LLC.

24. After recording the second notice of default, Hampton, on behalf of the HOA, mailed the notice of default and election to sell to the former owners; Nationstar Mortgage; and other interested parties via first class mail and certified mail.

25. On June 6, 2014, Hampton, on behalf of the HOA, recorded a notice of foreclosure sale with an amount due of $3,338.10, in the Official Records of Clark County Recorder as instrument number 20140616-0000548.

26. After recording the notice of foreclosure sale, Hampton, on behalf of the HOA, mailed the notice of foreclosure sale to the former owners; Nationstar Mortgage; and other interested parties via first class mail and certified mail.

27. On June 18, 2014, Hampton, on behalf of the HOA, posted the notice of trustee's sale in a conspicuous place on the subject property.

28. On June 18, 2014, Hampton, on behalf of the HOA, posted the notice of sale in three public places in Clark County: Nevada Legal News; the Clark County Courthouse; and the Clark County Building.

29. Hampton published the notice of sale in Nevada Legal News on three dates: July 9,

4

AKERMAN LLP
1635 VILLAGE CENTER CIRCLE, SUITE 200
LAS VEGAS, NEVADA 89134
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  2014; July 16, 2014; and July 23, 2014.

2  30. On July 30, 2014, Saticoy Bay appeared at the public auction and acquired the property at the HOA foreclosure sale as the high bidder with a bid of $34,100.00, as evidenced by the Trustee's Deed Upon Sale recorded on January 15, 2015, in the Official Records of the Clark County Recorder, as instrument number 20150115-0002525.

31. The Trustee's Deed Upon Sale contains the following recitals:

> This conveyance is made pursuant to the powers granted to the Association and conferred upon the appointed trustee pursuant to Nevada Revised Statutes 116.3115 et. seq. and Nevada Revised Statute 116.3116 through 116.31168 et. seq. and the provisions of the Declaration of Covenants, Conditions, and Restrictions recorded on June 14, 2002 in Book Number 20020614 as Instrument Number 02202, and any subsequent amendments thereto.

> Grantor complied with all applicable statutory requirements of the State of Nevada, and performed all duties required by such law, including the mailing of the Notice of Delinquent Assessment, Notice of Default and Election to Sell, and Notice of Sale. Said property was sold by Trustee and/or its agent(s) at a public auction on July 30, 2014 at the place named in the Notice of Trustee's Sale, in the County of Clark, Nevada in which the property is situated. Grantee, being the highest bidder at such sale, purchased said property and paid to trustee the amount bid being Thirty-Four Thousand One Hundred dollars ($34,100.00) in lawful money of the United States of America, or by the satisfaction of the obligations then due and payable to the association claimant.

32. The Trustee's Deed Upon Sale also states the conveyance is made "without warranty or covenant, expressed or implied, regarding title, possession or encumbrances."

33. Plaintiff's expert R. Scott Dugan, has created an expert report which plaintiffs have disclosed in this matter.

34. Mr. Dugan is qualified as an expert witness to testify as to the fair market value of the property.

35. Mr. Dugan used a sales comparison approach for calculating the fair market value of the property, whereby he compared similar properties sold between a willing buy and seller.

36. Mr. Dugan's method of valuation did not consider what properties at similarly-situated HOA foreclosure sales sold for at auction.

37. Based on Mr. Dugan's retrospective fair market valuation, the fair market value of the

5

1  property at the time of the HOA foreclosure sale was $212,000.00.

2      38.    Saticoy Bay's expert, Michael L. Brunson, has created an expert report which Saticoy
3  Bay has disclosed in this matter.

4      39.    Mr. Brunson is qualified as an expert witness to testify as to the impaired value of the
5  property.

6      40.    Mr. Brunson used an approach which took into account the fact that the sale of the
7  property was a forced sale with inherent risks, and compared the sale of this property which similar
8  properties which sold at HOA foreclosures.

9      41.    Based on Mr. Brunson's analysis, market value is not the appropriate type or
10  definition of value for this property.

11      42.    Mr. Brunson thus gives the property a fee simple impaired value at the time of the
12  HOA foreclosure sale of $34,000.00.

13  **B.**    **Additional Findings of Fact**

14      1.    Bank of America, N.A. (**BANA**) (then the beneficiary under the deed of trust),
15  through its counsel Miles, Bauer, Bergstrom & Winters, LLP (**Miles Bauer**), wrote Hampton and
16  asked for the payoff ledger for the borrowers' Silverstone account. (Harper Dep 24:1 to 25:3.)

17      2.    Hampton sent Miles Bauer a payoff demand including the full lien payoff amount of
18  $2,354.50 (as of May 10, 2013). (Pl. Tr. Ex. 16 (Demand).) The demand did not include a
19  statement of the superpriority lien amount but did show the monthly assessment amount was $56.65
20  and nine months of assessments totaled $509.85. (*Id.*; Harper Dep. 25:4-7, 21-24.)

21      3.    The second notice of default, recorded in the Official Records of the Clark County
22  Recorder on September 9, 2013, was recorded solely because Hampton did not receive reliable
23  tracking information from the U.S. Post Office showing proof of delivery of the first notice recorded
24  in January 2013. (Pl. Tr. Exs. 5, 7 (Notices); Harper Dep. 13:7-14, 14:7-13, 15:8-12.)

25      4.    Prior to the notice, the HOA issued two notices of lien.[4] (Pl. Tr. Ex. 27 at p. HH0123
26  (Dec. 17, 2012), p. HH0097 (July 23, 2013).)

27      5.    The HOA never rescinded the December 17, 2012 notice of lien or the January 30,

---

[4] Neither notice was recorded in the real property records of the Clark County, Nevada Recorder's Office.

2013 notice of default.

6. The notice of sale states it is foreclosing on the lien noticed on December 17, 2012. (*Id*. at Ex. 8 (Notice) (emphasis in original).)

7. If these findings of fact are more properly considered conclusions of law, they should be so construed.

## **CONCLUSIONS OF LAW**

**A.  Jurisdiction and Venue**

1. The court has diversity subject matter jurisdiction over this matter under 28 U.S.C. § 1332. There is diversity of citizenship between plaintiff Nationstar (not a citizen of Nevada) and defendant Saticoy Bay (a citizen of Nevada) and the amount in controversy exceeds $75,000.00.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because defendant Saticoy Bay resides in this district, a substantial part of the events and omissions giving rise to the claims occurred here, and the property at issue is in this district.

3. The court has personal jurisdiction over defendant Saticoy Bay because this action arises out of Saticoy Bay's purposeful purchase of an interest in real property in Clark County, Nevada. Saticoy is a Nevada limited liability company.

**B.  The payment of the superpriority lien preserved Nationstar's deed of trust.**

4. NRS 116.3116(1) gives a homeowners association a lien against its homeowners' properties when they fail to pay monthly assessments. But, only a portion of an association's lien has priority over a first deed of trust. As the Nevada Supreme Court explained in *SFR Investments*:

> As to first deeds of trust, NRS 116.3116(2) . . . splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*SFR Inv. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 411 (Nev. 2014).

5. The Nevada Supreme Court acknowledges a lender may preserve its interest by determining the superpriority amount and paying that amount in advance of the sale. *Id.* at 418. The Nevada Real Estate Division agrees. It confirms as much in its 2012 advisory opinion, relying upon UCOIA, upon which NRS chapter 116 is based. *See* December 12, 2012 NRED Advisory Opinion

7

44889066;1

No. 13-01, at 11.  UCIOA § 3-116's commentary acknowledges the superpriority concept is "a significant departure from existing practice," but "strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity of protecting the priority of the security interest of lenders." (*Id.* at 9.)  Therefore, "as a practical matter, secured lenders will most likely pay the [9] months' assessments demanded by the association rather than having the association foreclose on the unit." (*Id.*)  "**Payment of [the superpriority charges] relieves their superpriority status**." (*Id.* at 11 (emph.asis added).)

### 1. Calculation of the superiority lien.

6. Silverstone's superpriority lien was limited to nine months of common assessments. The Nevada Supreme Court settled this in *Ikon Holdings*, explaining, prior to the statutory amendments effective October 1, 2015, "a super-priority lien pursuant to NRS 116.3116(2) does not include an additional amount for the collection fees and foreclosure costs that an HOA incurs proceeding a sale; rather, it is limited to an amount equal to nine months of common expense assessments." *Horizon at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 72 (Nev. 2016).

7. The HOA's lien is perfected when its CC&Rs are recorded and "[n]o further recordation of any claim of lien for assessment …. is required." NRS 116.3116(5); *see Saticoy Bay LLC Series 2021 Gray Eagle Way v. JP Morgan Chase Bank, N.A.* 388 P.3d 226 (2017).  The superpriority portion of the lien includes maintenance and nuisance abatement charges and assessments "which would have become due in the absence of acceleration during *the 9 months immediately preceding institution of an action to enforce the lien*." NRS 116.3116(2).  A party has instituted "an action to enforce the lien" for purposes of NRS 116.3116(6) when it provides the notice of delinquent assessment.  *Saticoy Bay LLC Series 2021 Gray Eagle Way* 338 P.3d at 231. Here, the HOA provided its notice of delinquent assessment on December 17, 2012.

8. The relevant time period for calculation of the superpriority portion of the HOA's lien is the preceding 9 months – March 2012 through November 2012. The borrower first defaulted on their assessment obligations on August 1, 2012.  Even though the account was only five months delinquent when Hampton recorded the notice of sale, BANA paid a full nine months' worth of

8

44889066;1

assessments. BANA went beyond the requirements of Nevada law to preserve the deed of trust.

### 2. The July 23, 2013 notice of lien does not trigger a new superpriority lien.

9. The fact that the HOA provided another notice of its lien on July 23, 2013 does not change this analysis. The Nevada Supreme Court recently clarified that NRS 116.3116 does not limit an HOA to one lien enforcement action or one superpriority lien per property forever. *Property Plus Investments, LLC v. Mortgage Electronic Registration Systems Inc.*, 401 P.3d 728, 730-732, 133 Nev. Ad. Op. 62 (2017). But to trigger a new superpriority lien, the HOA must commence a new enforcement action. This can occur in two ways: (1) by completing a prior enforcement action through foreclosure, or (2) by recording a rescission of a prior lien. *Id*. *Property Plus* states, "Therefore, when an HOA rescinds a superpriority lien on a property, the HOA may subsequently assert a separate superpriority lien on the same property based on monthly HOA dues, and any maintenance and nuisance abatement charges, accruing *after the rescission of the previous superpriority lien*." *Id*. at 732-733 (emphasis added).

10. The HOA never rescinded the December 17, 2012 notice of lien. To the contrary, its notice of sale states it is foreclosing on the lien noticed on December 17, 2012. This is consistent with its CC&Rs, which state, "[t]he lien shall continue until fully paid or otherwise satisfied. (Joint Trial. Ex. 1, CC&Rs at section 7.10). Since there was no rescission of the December 17, 2012 lien, no new superpriority obligation was triggered.

11. There can be no dispute the amount paid was sufficient and the payment was accepted and applied by Hampton. (SF, ¶ 20-21; Joint Tr. Exs. 16-18; Harper Dep. 27:2-12.) This discharged the superpriority portion of the HOA's lien. (*See* Dec. 12, 2012 NRED Adv. Op. No. 13-01, at 11.)

**C.   Since the superpriority portion of the HOA's lien was discharged at the time of its foreclosure, Saticoy Bay's purported *bona fide* status is irrelevant.**

12. The Nevada Supreme Court has recognized an HOA can foreclose on only the subpriority portion of its lien. *Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1111 (Nev. 2016) ("And if the association forecloses on its superpriority lien portion, the sale also would extinguish other subordinate interests in the property.") *citing SFR Invs.*, 334 P.3d at 412-413. Here, since the superpriority portion of the HOA's lien was satisfied prior to the

9

44889066;1

foreclosure, the HOA foreclosed only on the subpriority portion of its lien.

13. Saticoy Bay argues the sale should be retroactively converted to include foreclosure of the superpriority portion of the lien because it is a bona fide purchaser. But, as this court held in its September 21, 2017 order, the bona fide purchaser analysis is irrelevant "[i]f [plaintiff] establishes no superpriority lien existed on the home at the time of foreclosure, [because plaintiff] would [then] hold superior title to Saticoy regardless of Saticoy's status as a bona fide purchaser." (ECF 52, citing NRS 111.325.) Because the superpriority lien had been discharged, the HOA foreclosed on the subpriority portion of its lien. Saticoy cannot take clear title when clear title was never for sale.

## ORDER AND JUDGMENT

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** BANA paid the full superpriority amount of Silverstone's lien prior to the sale, Nationstar's lien was not extinguished at the sale, and Saticoy Bay purchased the property subject to Nationstar's deed of trust.

Dated this 11th day of April, 2018.

**AKERMAN LLP**

*/s/ Melanie D. Morgan, Esq.*
MELANIE D. MORGAN, ESQ.
Nevada Bar No. 8215
DONNA M. WITTIG, ESQ.
Nevada Bar No. 11015
1635 Village Center Circle, Suite 200
Las Vegas, Nevada 89134

*Attorneys for Plaintiff and Counter-Defendant Nationstar Mortgage LLC*

## ORDER

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT JUDGE

April 12, 2018
DATE

44889066;1